(March 16, 1891.)

# DOAN ET AL. v. BOARD OF COMMISSIONERS OF LOGAN COUNTY.

### [26 Pac. 167.]

TAXPAYER MAY SUE TO PROHIBIT REMOVAL OF COUNTY RECORDS—
STATUTE CREATING COUNTIES CONSTRUED—COUNTY SEAT—CON-
STITUTION CONSTRUED.—Citizens who are residents, electors and
taxpayers of a county may bring a suit for injunction to pro-
hibit the removal of the county records from a place alleged to
be the county seat, to a place claiming to be legally selected as
the county seat of the county, and to test the legality of such
selection when there is no speedy and adequate remedy at law.

ACT CREATING ELMORE AND LOGAN COUNTIES CONSTRUED.—Section 6
of the act creating the counties of Elmore and Logan, approved
February 7, 1889, was not repealed or abrogated by section 2 of
article 18 of the constitution.

COUNTY SEAT—NEW COUNTY.—Said section 2, article 18 was not in-
tended to apply to the location of a county seat, consequent upon
the organization of a new county.

CONSTITUTION AND STATUTE CONSTRUED TOGETHER.—A strained con-
struction of the constitution is not required nor permitted, in
order to work the repeal of statutes not clearly repugnant thereto.
It is the duty of the court to give both the statute and the
constitution such construction as will give effect to both, unless
the statute is so clearly repugnant to the constitution as to admit
of no other reasonable construction.

COUNTY COMMISSIONERS—AUTHORITY TO SUBMIT QUESTION OF LOCA-
TION OF COUNTY SEAT.—The election held in the state on
October 1, 1890, was the general election for that year, and the
county commissioners of Logan county were authorized to submit
the question of the permanent location of the county seat for
said county to the voters at said election.

(Syllabus by the court.)

APPEAL from District Court, Logan County.

P. L. Williams and J. Bierbower, for Appellants.

The appellants, being residents, taxpayers, property owners,
and qualified electors, are proper plaintiffs, and are entitled to
the relief sought, if the case presented by the complaint is other-
wise sufficient. (High on Injunctions, 2d ed., secs. 1269, 1321;
*Bradley v. Commissioners,* 2 Humph. 428, 37 Am. Dec. 563;
Pomeroy on Remedies, 2d ed., sec. 142.)   The wrong shown in
the complaint is such an irreparable injury as entitles the plain-
tiffs to relief by injunction. (*Commonwealth v. Railroad Co.,*
24 Pa. St. 159, 62 Am. Dec. 372; *Hamilton v. Whitridge,* 11
Md. 128, 69 Am. Dec. 184; *Gause v. Perkins,* 3 Jones Eq. 177,
69 Am. Dec. 728.)   Every election must be authorized by law,
and in the authorization of elections the legislature invariably
provides what officers shall be elected thereat, and what question
shall be submitted to the voters. (Cooley's Constitutional
Limitations, *598; *Brewer v. Davis,* 9 Humph. 208, 49 Am.
Dec. 706; McCrary on Elections, 2d ed., secs. 109, 120,
121; Paine on Elections, secs. 5, 284, 285, 301, 307; *People v.
Weller,* 11 Cal. 49, 70 Am. Dec. 754; *Kenfield v. Irwin,* 52 Cal.
164; *People v. Hoge,* 55 Cal. 612; *Sawyer v. Haydon,* 1 Nev.
75; *Nevada v. Collins,* 2 Nev. 351.)

Arthur Brown and S. B. Kingsbury, for Respondent.

To maintain an action on behalf of the public, it must be by
somebody who is authorized to bind the public.   The plaintiffs
bring suit to prevent a change of the county seat, and to deter-
mine the constitutionality of the question.   This is beyond the
power of a private individual.   Such rights can only be deter-
mined by public authority. (*Demarest v. Wickham,* 63 N. Y.
320; *Doolittle v. Supervisors,* 18 N. Y. 155; *Osterhoudt v. Rig-*

*ney,* 98 N. Y. 229; *McMillen v. Butler,* 15 Kan. 62; *Starin v. Edson,* 112 N. Y. 215, 19 N. E. 670; 2 High on Injunctions, 1258, 1259; Paine on Elections, sec. 268.) Within the general grant of legislative power is the grant to submit to the people certain local questions, such as fixing a county seat. (*McWhirter v. Brainard,* 5 Or. 427; *Wells v. Taylor,* 5 Mont. 202,. 3 Pac. 255; *People v. Reynolds,* 5 Gilm. 1; *Cass v. Dillon,* 2 Ohio St. 614; *Thomson v. Lee Co.,* 3 Wall. 330; *Commonwealth v. Painter,* 10 Pa. St. 609.) No statute will be construed as repealing a prior one unless so clearly repugnant thereto as to admit of no other reasonable construction. (*McCool v. Smith,* 1 Black, 459; *Bowen v. Lease,* 5 Hill (N. Y.), 221; *Ex parte Yerger,* 8 Wall. 85, 105; *Furman v. Nicol,* 8 Wall. 44; *United States v. Sixty-seven Packages,* 17 How. 85; *Red Rock v. Henry,* 106 U. S. 596, 1 Sup. Ct. Rep. 434.)

MORGAN, J.—Appellants, who were plaintiffs below, are residents, taxpayers, and qualified electors of the county of Logan, in this state. John Hailey, H. T. Smith, and J. S. Whitton, defendants, are members of the board of county commissioners of the said county of Logan. By authority of section 8, article 21 of the constitution, the governor, on the eighteenth day of July, 1890, "ordered an election to be held by the qualified electors of the state of Idaho at the usual voting places, or in such places as may be provided in each precinct, on the first day of October, 1890, for the purpose of electing the following officers, namely: A representative in Congress, a governor, lieutenant-governor, Secretary of State, state treasurer, state auditor, attorney general, superintendent of public instruction, and three justices of the supreme court; a district judge and district attorney for each of the five judicial districts of the state; for each county in the state, three county commissioners, a sheriff, county treasurer, a probate judge, a county assessor, a clerk of the district court, a county surveyor, and coroner; a justice of the peace and constable for each precinct in the state; eighteen senators and thirty-six representatives for the legislature"—directing the board of county commissioners of each county to assemble at the county seat on the twenty-eighth day of July, 1890, and proceed to order an election to be held on

the said first day of October, for the election of all officers, state, district, and precinct; members of the legislature; a member of Congress; and directing that notices be given of such election, in the manner, and for the length of time, provided by the laws of the territory in cases of general elections for delegate to Congress, county and other officers; and directing that said election be conducted in all respects in the same manner as provided by the laws of the territory for general elections, including the registration of voters as provided by law. The board of county commissioners for Logan county, at the meeting held on the twenty-eighth day of July, 1890, made an order submitting to the voters of said county, at the election to be held therein on the first day of October, 1890, the question of the permanent location of the county seat of said county, alleging that said action was provided for in section 6 of an act of the Idaho legislature entitled, "An act creating and organizing the counties of Elmore and Logan, and defining the boundaries of Bingham and Alturas counties," approved February 7, 1889. Said special meeting was held pursuant to a notice published in the "Shoshone Journal," a newspaper published in said county of Logan, and in accordance with the proclamation of the governor. The notice calling the said meeting of the board of commissioners contained no statement that the matter of the selection of a permanent location of the county seat of said county would be acted upon. At said meeting the board of commissioners ordered that the question of the permanent location of the county seat of Logan county be submitted to the voters of said county at the election to be held October 1, 1890. At said election a majority of all the votes cast for the permanent location of the county seat of said county were in favor of the town of Bellevue, as appears by the canvass of votes made by the said board on the tenth day of October, 1890. On the seventh day of October, 1890, the plaintiffs filed their complaint in this cause, and alleged, among other things, that the defendants were about to remove the county archives, records, and property from the county offices in said town of Shoshone to the said town of Bellevue, and threaten that they will make such removal; and further allege that, unless restrained by the injunction of the court, they will take and remove the books,

archives, etc., from said town of Shoshone to the town of Belle-vue, to the damage of the plaintiffs and other taxpayers, electors and residents of said county; that said removal will be of great and permanent injury to all of the said residents, in that it will cost a large amount of the public revenue and moneys of said county to pay the expenses of the said removal, and will be of great and permanent disadvantage to the plaintiffs and other residents. Plaintiffs further allege that there was no petition whatever of a majority, or of any, of the qualified voters of said county ever made or presented at any time; allege that plaintiffs have no remedy at law; pray for temporary injunction until further hearing, and that it be made permanent on final hearing. To this complaint defendants demur upon the ground that the complaint does not state facts sufficient to constitute a cause of action; that the complaint does not state facts sufficient to entitle plaintiffs to any injunction, nor to entitle the plaintiffs to the interference of a court of equity. Filed October 21, 1890. On the same date the defendants filed their motion to dissolve the temporary injunction, and their answer; and deny that the county seat was ever permanently located at Shoshone; deny that the vote was taken for changing the county seat, but allege that the said vote taken on the first day of October, 1890, was for the permanent location of the county seat, in accordance with the provisions of an act of the fifteenth session of the territorial legislature, entitled "An act creating and organizing the counties of Elmore and Logan, and defining the boundaries of Bingham and Alturas counties," approved February 7, 1889; deny that the removal of the books, records, etc., would be of any damage to plaintiffs; and allege that Bellevue received a majority of all the votes cast at said election, and thereupon Bellevue was, by said board of county commissioners, declared to be the permanent county seat of Logan county. Various other matters were alleged, not deemed necessary to rehearse. On the twenty-third day of October, 1890, the hearing upon the motion to dissolve the injunction was had before the judge of the district court, which resulted in the dissolution of the injunction. From the order dissolving the said injunction this appeal was taken.

The first question necessary to be considered by this court is,
Can these parties bring an action of this kind? They allege
that they are residents and electors of Logan county, and tax-
payers therein.   They also allege that the board of county com-
missioners, defendants herein, had no right to submit this ques-
tion to the voters of Logan county at the election held October
1, 1890; that the constitution of the state required an affirma-
tive vote of two-thirds of all the votes cast at said election to
take the county seat to Bellevue; that two-thirds of said voters
did not vote in favor of said proposition; that said defendants
threatened to remove the books, records, etc., of said county to
Bellevue without authority of law; that said plaintiffs would be
greatly damaged thereby; that they had no adequate remedy at
law.   Pomeroy   on   Remedies   has   the   following:   "Actions
brought by a citizen and taxpayer or freeholder are permitted
in many, and perhaps most, of the states, and are common forms
of judicial proceedings to restrain the abuse of local legislative
and administrative power by municipal officers." (Pomeroy on
Remedies, sec. 142.)   And when an act about to be committed
by a municipal corporation is clearly illegal, and its necessary
effect will be to impose heavy burdens upon the property of
citizens and taxpayers, a court of equity is warranted in inter-
fering by injunction for the prevention of such act.   In such
case a more prompt and efficacious remedy is demanded than
is afforded by the tardy action of courts of law, and equity alone
can administer the necessary relief by the exercise of its extra-
ordinary power by injunction.   (2 High on Injunctions, secs.
1236, 1247.)   The preventive jurisdiction of equity extends
to the acts of public officers, and will be exercised in behalf of
private citizens who sustain such injury at the hands of those
claiming to act for the public as is not susceptible of reparation
in the ordinary course of proceedings at law.   (2 High on In-
junctions, sec. 1308.)   To the same effect is the following: "To
allow the taxable inhabitant to maintain a bill for an injunc-
tion to prevent illegal expenditures or appropriations of money
has the advantage of directness and simplicity, and notwith-
standing its departure, or apparent departure, from technical
principles, has the quite general, but not uniform, approval
of the courts of this country; and practically this course has

not had the effect to engender a multiplicity of similar suits by separate parties, but a few persons usually unite in one suit, which, when judicially determined, in effect settles the question in controversy.". (2 Dillon on Municipal Corporations, sec. 921.) To warrant the relief, however, in any case, it must appear that the acts complained of are of such a character that full and adequate redress cannot be had at law. (2 High on Injunctions, sec. 1243.) The record in this case does not show that there was any order entered upon the records of the county commissioners of Logan county directing the removal of the records or other property to the town of Bellevue, from which an appeal could have been taken to the court to test the legality of the election, or the threatened removal, nor does it appear that there was any other means for bringing the action of the county commissioners before the court for consideration and decision. We are of the opinion, therefore, that the plaintiffs had no adequate remedy at law, and that they were entitled to relief in equity. We do not understand the appellants to now seriously contend that the law passed by the fifteenth session of the legislature is void. We assume that the decisions of the courts have finally settled this question in favor of its validity. Section 6 of the act creating the county of Elmore is as follows: "The county seat of said Elmore county is temporarily located at the town of Rocky Bar; the county seat of Logan county is located temporarily at the city of Shoshone; and, at the regular election to be held in the year 1890, the county commissioners of said Elmore and Logan counties must submit the question of location of the county seat, for their respective counties, to the voters of their said counties, and the places in each county receiving the highest number of votes for the county seat is hereby declared to be the permanent county seats for said counties." The authorities are numerous and conclusive that the legislature has the right and authority to submit to the vote of the people certain local questions, among which is fixing a county seat. (See Paine on Elections, sec. 268, and cases there cited.)

The next question to be considered is, Was section 6 of the act of the fifteenth session of the legislature, entitled "An act creating the counties of Elmore and Logan," etc., abrogated

by the constitution? Section 2, article 21 of the constitution, provides that all laws then in force in the territory of Idaho, which are not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature. Section 2, article 18 of the constitution, is relied upon by the appellants as abrogating the section in question. It is clear from the reading of this section that the framers of the constitution had no such intention. It reads: "No county seat shall be removed unless upon petition of a majority of the qualified electors of the county, and unless two-thirds of the qualified electors of the county voting on the proposition at a general election shall vote in favor of such removal. A proposition of removal of the county seat shall not be submitted in the same county more than once in six years, except as provided by existing law," etc. The conditions apply to the removal of a county seat once permanently fixed. The county seat of Logan county had never been permanently fixed. The language of the section is: "The county seat of Logan county is located temporarily at the city of Shoshone." The legislature, in effect, says it is necessary that we should designate some place in said county where the county business shall be done, until the people can by their votes designate the place they desire for the permanent county seat. Therefore the act states the county seat is located temporarily at the city of Shoshone. The balance of the section puts the meaning beyond question, as follows: "And at the regular election to be held in the year 1890 the county commissioners of said Elmore and Logan counties must submit the question of location of the county seat for their respective counties to the voters of said counties, and the place in each county receiving the highest number of votes for the county seat is hereby declared to be the permanent county seat for said county." The language of the act is too plain for construction or argument. It was not the removal of the county seat which was submitted to the voters, but the permanent location thereof. The said section of the constitution, therefore, was not intended to apply to the location of a county seat, consequent upon the organization of a new county. A strained construction of the constitution is not required nor permitted in order to work the repeal of statutes

not clearly repugnant thereto. It is the duty of the court to give both the statute and the constitution such construction as will give effect to both, unless the statute is so clearly repugnant to the constitution as to admit of no other reasonable construction. (*McCool v. Smith,* 1 Black, 459; *Bowen v. Lease,* 5 Hill, 221; *Ex parte Yerger,* 8 Wall. 85, 105; *Furman v. Nichol,* 8 Wall. 44; *Red Rock v. Henry,* 106 U. S. 596, 1 Sup. Ct. Rep. 434.) We must therefore conclude that the section of the constitution was not intended to and does not repeal section 6 of the act requiring the location of the county seat of Logan county to be submitted to a vote of the people.

Had the board of commissioners lawful authority to submit the question of the permanent location of the county seat of Logan county to a vote of the people at the election held October 1, 1890? The language of the act is: "At the regular election to be held in the year 1890 the county commissioners of said Elmore and Logan counties must submit the question of location of the county seat to the voters of said counties." We accept the definition given to the word "regular" by the appellants, that it is, in this connection, synonymous with the word "general," and, as used, was intended to mean the general election, as provided for, by section 465 of the Revised Statutes of Idaho. The Revised Statutes of Idaho, sections 465, 466, are as follows:

"Sec. 465. There must be held throughout the territory on the first Tuesday after the first Monday of November, in the year 1888, and in every second year thereafter, an election to be known as the 'general election.'

"Sec. 466. At such election the following officers must be elected: One delegate to Congress for the entire territory; members of the legislative council and House of Representatives, according to the number apportioned by law to the county, or to counties jointly; one probate judge; one treasurer, who is *ex-officio* public administrator; one sheriff; one district attorney; one recorder, who is *ex-officio* auditor, and *ex-officio* clerk of the board of county commissioners; one assessor, who is *ex-officio* tax collector; one surveyor; one school superintendent; and one coroner for each county, and one county commissioner

for each of the three districts of each county; two justices of the peace and one constable for each precinct of each county."

It is not a general election because the day on which it was to take place was fixed as the first Tuesday after the first Monday of November, 1888, and every second year thereafter, but because all the officers of the territory, of the districts, and of the counties and precincts were then to be elected. If the legislature, or any other competent authority, should in the meantime change the date on which the same officers should be elected, it would still be the general election for that year. (McCrary on Elections, sec. 159.) Congress might have at any time changed the date provided by this statute for the election of the same officers in the territory of Idaho, and it would have still been the general election. The constitution adopted by the people, and ratified by Congress, did change the date for the general election for the year 1890, and fixed said time by the proclamation of the governor on October 1st of said year. At said time so fixed were elected all the officers named in section 466, above quoted, and many more. Such a general election never did occur in the history of the territory, and never will occur again in the progress of the state. The term "general election" is more clearly and completely defined by reference to the next section of the statute, which defines "special elections," as contradistinguished from "general elections," described in section 466, as follows:

"Sec. 467. Special elections are such as are held to supply vacancies in any office, and are held at such times as may be designated by the proper board or officer."

It was not the day on which it occurred, nor the authority which designated the day, but the character of the election, which made it the general election for that year. The statute making it the duty of the board of county commissioners to submit this question to the voters at the general election for the year 1890 rendered it unnecessary for the commissioners to give any notice, in their call for the meeting of July 28th, that such action would be taken. We are of the opinion, therefore, that the board of county commissioners had the authority, and it was their duty, to submit the permanent location of the county seat of Logan county to the voters at said election; that

they did lawfully submit said question to said voters; that said
election resulted in the selection of Bellevue as the permanent
county seat; and that the board of county commissioners had
lawful authority to remove the records to said town. The ac-
tion of the judge of the court below, refusing the permanent,
and dissolving the temporary injunction, is approved, and the
judgment affirmed. It is further ordered that the plaintiffs
herein pay the costs of this action, and that execution issue
therefor.

Sullivan, C. J., and Huston, J., concur.