(No. 5483.   February 1, 1930.)

GRANT MILLER, Plaintiff, v. CITY OF BUHL, a Municipal Corporation of the State of Idaho, L. G. JOHNSON, Mayor of the City of Buhl, and J. J. RUGG, C. D. STARR, G. L. THOMPSON and S. E. HYDE, Councilmen of Buhl, and FAIRBANKS, MORSE & CO., a Corporation, Defendants, IDAHO POWER COMPANY, a Corporation, and J. J. BOYD, RALPH C. MORSE, L. E. McNAMARA, S. B. SLEE, J. G. SLOAN, LEWIS ZUCAL, C. C. BOELLERS and JAMES E. GIBBS, Intervenors.

[284 Pac. 843.]

Frank L. Stephan, for Plaintiff.

Roy L. Black, for Defendant Fairbanks, Morse & Co.

J. H. Sherfey, for Defendants City of Buhl et al.

S. T. Lowe, *Amicus Curiae.*

C. G. A. Divelbiss and Hodgin & Hodgin, for Certain Intervenors, file brief, citing substantially the same authorities as plaintiff.

Hawley & Hawley, for Intervenor Idaho Power Company.

WM. E. LEE, J.—Buhl is a municipal corporation, a city of the second class. Desirous of owning and operating an electric light and power system of its own, it conceived a plan therefor, the legality of which is for determination in this proceeding. It proposes to construct an electrical distributing system from the proceeds of a bond issue already authorized, and to enter into a contract with Fairbanks, Morse & Co., for the purchase of a fully equipped electric power generating plant and pay the purchase price from a special fund to be supplied from the rates to be collected from the product or service of the combined distributing system and generating plant. Among other things, it is provided in the contract, which this court is asked to pro-

hibit the city from entering into, that title to the generating plant, which Fairbanks, Morse & Co., is to construct, will remain in them until the purchase price is fully paid.

The purchase price, evidenced by pledge orders, is "payable in seventy-two equal monthly payments of $1,347.00 each, first payment of $1,347.00 to be due and payable sixty days after formal notification in writing by Company of completion of installation of Company's equipment, and a like amount payable every thirty days thereafter until paid in full, provided, however, that there are sufficient funds in said special fund to make said payments and only when there are sufficient funds in said special fund from which they can be paid."

And, it is further provided:

" . . . . that the obligation to pay the deferred installments of said purchase price and said pledge orders issued in evidence thereof is not a general obligation of the said Municipality payable from taxes or its general funds but only a special obligation payable from the net revenues of the electric light and power plant of the Municipality. . . . . The Municipality covenants to operate said plant in an efficient and economic manner, and to maintain rates for the product or service of said plant which will produce sufficient revenue to provide for the payments called for by this contract so far as it may be permitted to do so by law, such rates, however, shall not exceed rates now charged in City of Buhl for like service."

The city has not set out in its annual appropriation bill for 1929 any part of the sum it proposes to pay for the generating system, except possibly an item of $3,834.25, for street lighting, etc., and the purchase price of the generating system, after deducting the $3,834.25, is in excess of the income and revenue for the year. The proposition has not been assented to by two-thirds of the qualified electors of the city, nor has the city made provision for the collection of an annual tax sufficient to pay the interest as it falls due, nor to provide for a sinking fund from which to pay the principal within twenty years.

The foregoing is a brief statement of some of the facts put in issue by the demurrers of the city and Fairbanks, Morse & Co., but it is thought sufficient to disclose that the main question before us is whether, by entering into the proposed contract to purchase the generating plant and pay therefor solely out of the revenues of the combined distributing system and generating plant, the city will incur such an indebtedness or liability as is contemplated and prohibited by the Constitution of the state.

The question is not a new one in this jurisdiction; it was before this court in *Feil v. City of Coeur d'Alene*, 23 Ida. 32, 129 Pac. 643, 43 L. R. A., N. S., 1095. In that case, the city of Coeur d'Alene was enjoined from issuing and selling municipal coupon bonds in payment of a system of waterworks, the principal and interest of the bonds being payable " . . . . solely from a fund to be created from the revenues of the waterworks. . . . . "

Article 8, sec. 3, of the Constitution is as follows:

"Limitations on County and Municipal Indebtedness. No county, city, town, township, board of education, or school district, or other subdivision of the state shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: *Provided,* That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

However, the decision in the Feil case is challenged, and, in many particulars it is insisted the facts in that case are distinguishable from the facts in the case at bar. In only

two immaterial instances are we able to discern any difference. In the Feil case, municipal coupon bonds were to evidence the obligation of the city, while in this case the obligation is to be evidenced by the city's pledge orders. Since both the bonds and the pledge orders provide for payment out of special funds from the revenues of the systems respectively, in so far as the constitutional question is concerned, there is no difference in the obligations. In the Feil case the bonds were to be paid from the net revenues of the water system; in this case the obligation is to be satisfied from the net revenues of the light and power system. It is true that, in the Feil case, the city attempted to bind itself to maintain such water rates to the consumers (and increase them, if necessary), that the revenues, after subtracting the cost of operation and maintenance and the amounts required for the payment of other charges against the revenues, would be sufficient to pay the principal and interest of the bonds as they became due. In the instant case, the City of Buhl proposes to bind itself to maintain rates for the service of the light and power system that will produce sufficient revenue to make the payments specified by the contract and evidenced by the pledge orders, "so far as it is permitted to do so by law, such rates, however, shall not exceed rates now charged" in Buhl for like service. The majority held, in the Feil case, that the obligation, which Coeur d'Alene assumed, to maintain the then present water rates, or to raise them, if necessary, was "clearly *ultra vires* and an obligation which the city could not perform or discharge." Judge Stewart was in practical agreement, for he said that it "can in no way affect or annul the law of the state granting to a city the power to regulate the water rates within a municipality at a reasonable rate, and the purchaser of such bonds is advised of such fact when said bonds are purchased, and in accepting the bonds, accepts them with the knowledge that under the laws under which such bonds have been issued, such bonds are to be paid only from the revenue derived from the system,

and that the rates fixed by the city are required to be reasonable.''

Accordingly, since a city cannot obligate itself with respect to its power to fix rates, the provision in the Feil case, to maintain rates and raise them, if necessary, was as ineffective as the agreement in the present case not to raise the rates. The two cases cannot, therefore, be differentiated on this ground.

It is also most strenuously and ably contended that the decision in the Feil case is wrong and that, even if it is thought decisive, it should not be followed. It may readily be admitted that the wording of art. 8, sec. 3, is identical with a provision in the Constitution of California and quite similar to provisions in the Constitutions of some of the other states, whose courts have held that such an obligation, as that which Coeur d'Alene attempted to incur, did not constitute an indebtedness within the constitutional sense. In fact, a majority of the courts, in passing on the question, have followed *Winston v. City of Spokane,* 12 Wash. 524, 41 Pac. 888,[1] rather than *Feil v. Coeur d'Alene.* Some of those courts have attempted to explain away the decision in the Feil case, particularly the supreme court of California in *Shelton v. City of Los Angeles,* 206 Cal. 544, 275 Pac. 421. A careful analysis of the Feil case, however, will disclose, it is most respectfully submitted, that it was not decided on the ground stated by the California court.

On the contrary, any attempt to explain away the decisions of the other courts would be unavailing. The fact remains, however, that such decisions are, as stated, based on constitutional provisions not exactly like our own. If this question were here for the first time, in view of the decisions relied on by defendants, this court might not reach

---

1 *McClain v. Regents of the University,* 124 Or. 629, 265 Pac. 412; *Searle v. Town of Haxtun,* 84 Colo. 494, 271 Pac. 629; *Shelton v. City of Los Angeles,* 206 Cal. 544, 275 Pac. 421; *Barnes v. Lehi City,* (Utah) 279 Pac. 878; *Briggs v. Greenville County,* 137 S. C. 288, 135 S. E. 153; *City of Bowling Green v. Kirby,* 220 Ky. 839, 295 S. W. 1004.

the conclusion arrived at in the Feil case. Indeed it might be better, in view of the tax burden imposed on real property, for the consumers of water, electricity, etc., to provide the funds necessary to purchase such water and light systems. But the Feil case was decided in 1912, and, as suggested, in the opinion on rehearing, if the Constitution, as therein interpreted, is not satisfactory, a remedy is available. Personally, however, I am of the opinion that the Constitution is as applicable to an obligation, an indebtedness or a liability of a city, payable solely from such a special fund as to an obligation, indebtedness or liability payable out of a fund made up from municipal taxes. In the Feil case, this court said:

" .... But when we turn to the constitution, we find that it does not merely prohibit the city from incurring any *municipal* indebtedness or liability, but it prohibits it incurring *any* indebtedness or liability. Now, if the city has the power to obligate the water consumers to pay for this system or to obligate any specific property to pay for it, or any particular class of citizens to pay for it, then it is prohibited as much by sec. 3, art. 8, of the constitution from *incurring such indebtedness or liability* as if it were a *city* indebtedness or liability, because the constitution says it 'shall not incur any indebtedness or liability' exceeding a certain limitation without at the same time levying an annual tax to meet such obligation and submitting the question to a vote of the people."

On the authority of *Feil v. City of Coeur d'Alene*, it is our conclusion that art. 8, sec. 3, of the Constitution prohibits the city from incurring the obligation provided in the contract and evidenced by the proposed pledge orders. We have examined all the attacks made on the decision in the Feil case. It suffices to say that, under the circumstances, we believe they are without merit. To discuss each of the many points argued would unduly lengthen this opinion. As to the other grounds advanced by plaintiff and intervenors, it is unnecessary to decide them.

The writ is made permanent.

The foregoing opinion having been written by Justice Wm. E. Lee before his retirement from this bench is hereby adopted as the opinion of the court.

Givens, C. J., and T. Bailey Lee and Varian, JJ., concur.

Budge, J., concurs in the conclusion reached.

Petition for rehearing denied.