(Nos. 5905, 5905a. December 21, 1932.)

GEORGE STRAUGHAN, IVIN R. JOHNSON and H. A. ANDERSON, Appellants, v. CITY OF COEUR D'ALENE, a Municipal Corporation of the State of Idaho, JESS RAY SIMPSON, Mayor, PAUL SCHROEDER, F. H. LAFRENZ, GUS NELSON, RALPH GAINES, S. H. McEUEN, L. M. STODDARD, P. J. BRODERICK and JAMES O'TOOLE, Councilmen of the City of Coeur d'Alene, Respondents.

[24 Pac. (2d) 321.]

Gray & McNaughton and Robt. H. Elder, for Appellants.

496

W. B. McFarland, for Respondents.

GIVENS, J.—Appellants, taxpayers of the City of Coeur d'Alene, sought to enjoin the city councilmen and city from carrying into effect two ordinances regularly adopted by a sufficient vote of the citizens of the city, under the provisions of chapter 152, Sess. Laws 1931, one providing for the acquisition by the city of a municipal lighting plant; the other, a waterworks system.

While separate actions, they involve identical issues, and have been consolidated for consideration.

Appellants contend that chapter 152, Sess. Laws 1931, page 255, and the ordinances thereunder, are unconstitutional under the holdings of *Feil v. City of Coeur d'Alene*, 23 Ida. 32, 129 Pac. 643, 43 L. R. A., N. S., 1095; *Miller v. City of Buhl*, 48 Ida. 668, 284 Pac. 843, 72 A. L. R. 682, and *Williams v. City of Emmett*, 51 Ida. 500, 6 Pac. (2d) 475. Respondents do not urge that there are any vital distinctions between the contracts considered in *Feil v. City of Coeur d'Alene* and *Miller v. City of Buhl, supra*, and the contemplated municipal action herein, but urge that

those cases should be overruled because not sustained by the weight of authority, and not in keeping with the modern trend of municipal political economy, and that the conclusions were arrived at therein by faulty reasoning.

Chapter 152, *supra,* and the two ordinances do, however, differ from the situation in the two above cases in two particulars; one, an election was held herein as authorized by the chapter, and rates for service are only required to be reasonable.

██ If, however, the method of acquiring the utility creates a liability within the contemplation of art. 8, sec. 3, holding an election satisfies only in part the requirement of said section, there remaining unfulfilled that of providing a sinking and retirement fund to pay for the utility.

It was held in *Feil v. City of Coeur d'Alene, supra,* that the provision as to rates in the ordinance therein considered, i. e., adequate to pay for the plant within twenty years, was of no particular effect, since in no event could the rates charged be other than reasonable.

There thus remains under the present contemplated method outlined by the statute carried into the ordinance the constitutional defect pointed out in the Feil case as to the imposition on the municipality of a liability in connection with the charge to, or payment by, the municipality for service rendered itself as distinguished from its inhabitants. The Feil case stated as follows:

"The city proposes by the ordinance No. 380 to purchase a water system and to become the owner thereof. It proposes, on the other hand, to make those who use water from this water system, the purchasers of water, pay for the waterworks system. The persons who are to pay for the system, however, will not be the owners when final payment is made. The property of the municipality is not taxed and no specific property is pledged. The citizens, as a whole, or as a class, are not taxed. So far as the municipality is concerned, it is to either have the free use of the water for municipal purposes or else it must levy a tax sufficient

to raise revenue to pay its proportion into this fund. It certainly is not going to pay itself for the use of its own property, nor can it levy a tax for the purpose of paying into the city treasury rentals for the use of municipal property. If it contributes anything to this fund, it will necessarily have to levy a tax annually for the purpose of raising sufficient revenue to pay its proportionate share or reasonable rate in contributing to this common fund that is to be used to purchase this property. At this juncture, however, the city will be confronted with another serious problem. When it engages in public ownership of a water system and sells water and charges rates to individual consumers, the receipts from this source will at once become an *income*, under the provisions of sec. 3, art. 8, of the constitution, which it is forbidden to pledge or hypothecate for more than the current year, and yet it is hypothecating *that income for twenty years*. In other words, it purchases a property which, in the ordinary course of business, would produce a *revenue or income* to the city. As soon as these rentals are collected, they will belong to the city, and the fund, whether it be a general or a 'special fund,' will belong to the city and be city or municipal property.

"As said by the supreme court of Illinois in *City of Joliet v. Alexander*, 194 Ill. 464, 62 N. E. 863, 'It does not make any difference that the certificates (bonds) are payable out of the special fund, if the city is the owner of the fund. All its obligations are payable out of some particular fund. . . . . The section of the constitution limiting indebtedness provides that at the time of incurring any indebtedness the city shall provide for the collection of a direct annual tax sufficient to pay the interest on the debt as it falls due, and to pay and discharge the principal within twenty years from the time of contracting the debt, and every indebtedness is payable from some particular fund.' "

"After it owns that property, the receipts from water rents would clearly be an *income or* revenue within the purview and meaning of the constitution, but in advance

of the purchase it undertakes to appropriate and hypothecate that *income* for a period of twenty years so that it may not be an *income* after the purchase is made. This is mere jugglery with words. This revenue will be no less an income after this transaction is consummated than it would have been had the city bought and paid for the property at the time. If this method can be pursued for purchasing a waterworks system, the same method could be pursued in purchasing an electric light and power plant, and a similar method might be adopted for a purchase of a telephone system within the municipality, and so also a street railway, and there will be no limit, either to the power of purchase and acquisition or to the power of the city council to incur indebtedness upon the prospective consumers or patrons, as the case may be. The *consumer,* not the taxpayer, may well sigh at the mere statement of the possibilities of such a proposition carried to its natural conclusion and lose himself in contemplating the cost of water, light, telephone and transportation when the *consumer* alone is paying for those public utilities.''

This feature has been in similar controversies recognized by other courts as imposing a liability on the municipality violative of constitutional inhibitions similar to our own.

In *Hight v. City of Harrisonville,* 328 Mo. 549, 41 S. W. (2d) 155, 159, the court said:

''Defendants do not contend that the city will not use its own current to light its streets and for power to operate its water plant. It would be idle for them to do so. The city would not purchase current from others when it had current of its own for sale. Indeed, defendants concede that the electric plant of the city will furnish power for its water plant, and the evidence shows that the city contemplates using its own current to light its streets. . . . . It is evident from a consideration of the contract as a whole that it was the intention of both parties to require the city to pay into the special fund and thereby pay on the purchase price of the engines and equipment a sum of money equal to the cost of current used by the city at the 'regular

established rate.' It is also evident that the parties knew this payment by the city must be from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. Therefore, they resorted to this subterfuge in an effort to evade the constitutional prohibition. The trick is so transparent that we do not wonder at the failure of defendants to undertake a defense of this provision of the contract. 'Whenever courts see such attempts at concealment ''they brush away the cobweb varnish,'' and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it. In all such cases it is, in truth, rather the particular transaction than the statute which is the subject of construction; and if it is found to be in substance within the statute, it is not suffered to escape from the operation of the law by means of the disguise under which its real character is masked.' Maxwell, Interp. Stat. 133, 134.

''The bar to the constitutional prohibition is clear, and we should not permit it to be evaded. The contract must be held invalid. The chancellor held it so for this reason and for other reasons. Consideration of the other reasons is unnecessary.''

See, also, *City of Campbell v. Arkansas-Missouri Power Co.*, (C. C. A.) 55 Fed. (2d) 560.

There are perhaps in number more cases holding generally contrary to *Feil v. City of Coeur d'Alene* than there are in accord with it, but we do not consider that they are better reasoned or that they more correctly interpret the evident and clearly expressed meaning of art. 8, sec. 3. Of those decided since *Feil v. City of Coeur d'Alene* which have been brought to our attention, *Lang v. City of Cavalier*, 59 N. D. 75, 228 N. W. 819, cites *Feil v. City of Coeur d'Alene*; *Kasch v. Miller*, 104 Ohio St. 281, 135 N. E. 813, indicates there was no such authority, i. e., as *Feil v. City of Coeur d'Alene*; *Sowell v. Griffith*, (Tex. Com. App.) 294 S. W. 521, does not mention it; *Franklin Trust Co. v. City of*

*Loveland,* (C. C. A.) 3 Fed. (2d) 114, does not mention it and merely follows a state decision; *City of Bowling Green v. Kirby,* 220 Ky. 839, 295 S. W. 1004, *Klein v. City of Louisville,* 224 Ky. 624, 6 S. W. (2d) 1104, *Jones v. City of Corbin,* 227 Ky. 674, 13 S. W. (2d) 1013, all from Kentucky, do not mention it, and rely upon reasoning which does not impress us as superior to that in *Feil v. City of Coeur d'Alene.*

In *Bell v. City of Fayette,* 325 Mo. 75, 28 S. W. (2d) 356, the distinction between "debt" and "liability" is recognized, and it cites and distinguishes the Feil case on that ground, thus reasoning contrary to respondents' contention that there is a real difference between "debt" and "liability." The Feil case clearly shows by quoted definitions the difference. The authorities all recognize and assert that "liability" is a much broader term than "debt" (17 C. J. 1371; 36 C. J. 1050), and if the framers of our Constitution did not intend that a difference should be recognized and heeded, or that "debt" alone was sufficient, why did they use both terms? (12 C. J. 703.)

No argument opposed to the reasoning and conclusion in the Feil case has been presented which was not considered and disposed of therein, or in *Miller v. City of Buhl, supra,* and since the Miller case at least one other jurisdiction has held to the same effect. (*Zachary v. City of Wagoner,* 146 Okl. 268, 292 Pac. 345.)

██ ██ The court has no more power to amend the Constitution than has the legislature, and *vice versa.* We may well take into account changing conditions and modern economic and social trends when it comes to interpretation and construction of the Constitution, but that does not warrant amendment of the Constitution by judicial process or legislation. The fundamental power still remains in the people controllingly expressed by them in the Constitution, binding alike on all. (*Golden Gate Highway Dist. v. Canyon County,* 45 Ida. 406, 262 Pac. 1048; *Boise Payette Lumber Co. v. Challis Ind. School Dist.,* 46 Ida. 403, 268 Pac. 26.)

Respondents' argument virtually concedes that to decide in their favor would be amending, when they say:

"It is not enough to say to the people that if they desire their own utilities, they can amend the constitution. It is not easy to procure a constitutional amendment. A proposition to .amend a constitution would no doubt be opposed by those who are vitally interested, and who would have means financially to oppose such an amendment. The cities desiring such an amendment would be seriously handicapped to meet this opposition,"—

for while they say:

"And, so our court will not refuse to study this case and the authorities submitted thoroughly upon the assumption that the people can easily amend the constitution if they desire,"

they really mean to conclude:

"And, so the court will not refuse to *amend the Constitution.*"

As in effect pointed out in *Miller v. City of Buhl, supra,* the decision in the Feil case has stood from 1912 to 1930 with no attempt at amendment, and since the Buhl decision there has been another session of the legislature which proposed five constitutional amendments, two of which were adopted and three rejected, which, if any argument were needed, clearly establishes that the people of the state are perfectly capable of discriminatingly amending the Constitution as they desire.

 While legislative construction of the Constitution is persuasive, it is not controlling (*Fralick v. Guyer,* 36 Ida. 648, 213 Pac. 337), and the interpretation is, in the last analysis, for this court (*McBee v. Brady,* 15 Ida. 761, 775, 100 Pac. 97), and it is pertinent to observe that the long-continued acquiescence by the people and the legislatures of this state between the Feil case and the Miller case, nine. sessions, in the correctness of the decision in the Feil case, is worthy of note. (*Louisville & Nashville R. Co. v.*

*United States,* 282 U. S. 740, 51 Sup. Ct. 297, 75 L. ed. 672.)

The language of this court in *Fluharty v. Board of County Commrs.,* 29 Ida. 203, 211, 158 Pac. 320, is particularly apt:

"We must deal with this question as strictly a judicial one, however clear our convictions are that the purposes sought to be obtained are praiseworthy and beneficial to the public. We cannot for that or any other reason usurp authority which does not belong to us, and by judicial construction make ineffectual a plain constitutional provision, however long innocently violated. Where the constitution, being the supreme law of the state, forbids an act, no legislative enactment can legalize it. And for this court to do other than to adhere strictly to the provision of the constitution would be an act of judicial lawlessness. Nor will the best and most patriotic intentions make that law which contradicts the principles of the constitution or contravenes it justifiable."

We adhere to *Feil v. City of Coeur d'Alene* and *Miller v. City of Buhl, supra.*

Judgments reversed, with instructions to grant the injunctions prayed for. Costs to appellants.

Lee, C. J., and Budge and Varian, JJ., concur.

Leeper, J., took no part.

ON REHEARING.

(August 4, 1933.)

GIVENS, J.— While respondents do not raise the point, it has been suggested that the complaint is not sufficient to show that appellants are entitled to injunctive relief because they fail to indicate how they will, or may, be specifically injured by the proposed acquisition by the municipality of the utilities in question.

The complaint in substance as to this phase of the matter alleges that the appellants are taxpayers, residents and citizens, and at present patrons of the respective utilities exclusively serving the inhabitants of Coeur d'Alene; that the obligations will be those of the municipality, and that no sinking fund is provided for, nor has any election for the issuance of the bonds been held, as required by sec. 3 of art. 8 of the Constitution; that the proposed plan will cause citizens and taxpayers great and irreparable injury. The answer denied that there would be irreparable injury, but admitted that appellants are taxpayers, residents and citizens, and affirmatively justified the proposed scheme under chap. 152, Sess. Laws 1931. Copies of the various supporting ordinances were attached as exhibits, which, at the trial of the case, were admitted in evidence.

There was also evidence as to the equipment of the utilities now serving the community, and as to the city's finances, bonded indebtedness, etc., which, to the extent indicated, supported the allegations of the complaint.

If the proposed plan of acquiring these utilities imposes any liability upon the taxpayers and citizens of the municipality, it would seem at least in the absence of the point being raised, that the complaint was sufficient on that score, and there is the possible liability of the municipality for torts in connection with the to be acquired utilities; the possibility of attempted financial support similar to chap. 134, Sess. Laws 1929, as considered in *Oregon Short Line R. Co. v. Berg*, 52 Ida. 499, 16 Pac. (2d) 373. There is also the necessity of the imposition of increased rates, not only to pay the maintenance and operation of the plants, but their purchase price, and such contingencies, if not direct liabilities, are sufficient to justify these appellants in bringing the action, and supported by the following authorities: *Doan v. Board of Commissioners of Logan County*, 3 Ida. 38, 26 Pac. 167; *Woodruff v. Welton*, 70 Neb. 667, 97 N. W. 1037; *Fischer v. Marsh*, 113 Neb. 153, 202 N. W. 422; *Neumann v. Knox*, 115 Neb. 679,

214 N. W. 290; *Harris v. City of Philadelphia*, 299 Pa. 473, 149 Atl. 722. In connection with the last case, it will be noted that the statute referred to granted equity powers sufficiently similar to the general equity powers possessed by courts in this state to be in point. (See, also, *Milligan v. Miles City*, 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C, 395; 32 C. J. 48; 50 C. J. 694.)

The Feil case fully considered the argument that the situation here is similar to that involved in special and local municipal improvement districts, but since this point is again stressed, it is important to notice this difference: In local special improvement districts, the charge is only against the property, and only the property can be taken. Herein, while the tangible liability, if it may be so expressed, consists only of the property purchased, the statute requires that rates, though reasonable, be made in contemplation of their sufficiency to pay for the property.

Attention is also called to the statutes passed in 1933, chap. 186, p. 351, chap. 187, p. 357, with regard to the acquisition and development of water plants and sewerage systems, which enable the municipality to acquire such systems by pledging the revenues therefrom, though evidently considering them general obligations, thus recognizing the binding force and effect of the Constitution as construed in the Feil and Miller cases, and we are entitled to assume the 1933 legislature considered the original opinion in this case, issued December 21, 1932, the present opinion being on rehearing.

We adhere to *Feil v. City of Coeur d'Alene* and *Miller v. City of Buhl, supra.*

Judgments reversed, with instructions to grant the injunctions prayed for. Costs to appellants.

Budge, C. J., and Johnson, D. J., concur.

Morgan and Holden, JJ., dissent.