201 P.2d 750

**GENERAL HOSPITAL, Inc., et al. v. CITY OF GRANGEVILLE.**

**No. 7477.**

Supreme Court of Idaho.

Jan. 8, 1949.

Wilbur L. Campbell, of Grangeville, and Ray E. Durham, of Lewiston, for respondent.

HOLDEN, Chief Justice.

In May, 1946, M. L. Ayers commenced an action in the District Court of the Tenth Judicial District in and for Idaho County against General Hospital, Inc., City of Grangeville and the First National Bank of Lewiston. Ayers alleged in his complaint he was suing for and in behalf of himself and all citizens of Grangeville, and also the stockholders of General Hospital, Inc., against General Hospital, Inc., and

J. H. Felton and William J. Jones, both of Lewiston, for appellants.

others for a declaratory judgment determining the conflicting claims, rights and status of General Hospital, Inc., City of Grangeville and the First National Bank of Lewiston. The City and the Bank demurred to the complaint upon the ground it did not state a cause of action. The trial court sustained the demurrers and dismissed the action. From the judgment of dismissal, Ayers appealed to this court. Ayers v. General Hospital, Inc., 67 Idaho 430, 182 P.2d 958.

On that appeal, the decisive question presented for determination was: Did the complaint state a cause of action?

In passing on that question, this court pointed out the complaint alleged that in 1938, " 'the General Hospital' was organized as a domestic business corporation to construct and operate a hospital in Grangeville; that 1315 shares at a par value of $32,875.00 were issued and subscribed for; and additional donations of upward of $2,500.00 were received, but were insufficient and on solicitation to the U. S. Government for assistance, it was found a grant could be made only on application by a municipality. Thereupon, agreements were reached between the United States Government and the City of Grangeville, whereby the funds of the General Hospital, placed in a fund in the City Treasury, were matched in whole or in part by Federal funds and the hospital was thereby constructed on land owned by the city; the hospital was furnished in large part by funds of the General Hospital, Inc.; that the operating funds were deposited in the Grangeville branch of the First National Bank of Lewiston; and managed and controlled by directors of the General Hospital, Inc., and a committee of the City of Grangeville from 1940 to 1945, when such funds 'without any action on the part of the Corporation (Hospital) were made a part of the City funds' and since operated by the city; and that since December 1945, the management and control of the hospital and funds (then $13,909.00) have been in the hands of a committee appointed by the Mayor of the city; that plaintiff believes the management and control of the hospital can be handled better by the General Hospital, Inc., which was organized for that purpose and if so operated, it will repay the stockholders and subscribers; and appellant prays that the conflicting claims, rights and status of the General Hospital, the bank and the city be determined." Ayers v. General Hospital, supra, 67 Idaho at page 433, 182 P.2d at page 958.

It will be noticed the complaint alleged a disagreement between the parties touching the management and operation of the Hospital "without pleading the facts disclosing the grounds for and at least the basis for plaintiff's [Ayers] claims in connection with the disagreement". On that point this court held: "A pleading should allege facts as distinguished from mere conclusions", further holding: "Conceding the Declaratory Judgment Act confers

broad powers and that courts may anticipatorily decide status, rights, etc., nevertheless, facts must be alleged and the complaint was fatally deficient in not setting forth the agreements and contracts under which the hospital was constructed and initially operated, the respective parties' rights, or in what way the city had violated such agreements, or any one's rights, etc. Therefore, the court properly sustained the general demurrers." Ayers v. General Hospital, supra, 67 Idaho at pages 434–435, 182 P.2d at page 960.

Having pointed out with great particularity wherein the complaint was deficient, leave was granted Ayers to amend his complaint in order that he might allege the omitted facts and thus state a cause of action. It is clear leave was not granted to plead a new or different cause of action.

■■ While amendments and the filing of amended pleadings rest in the sound, legal discretion of a trial court and, further, in determining the question of discretion, the power of the court should be freely and liberally exercised under the statute (Section 5-905, I.C.A.), it must be kept in mind in the instant case, that application for leave to file an amended complaint was not made in the lower court; hence, the discretion of that court was not invoked nor was leave granted to file the second amended complaint. In these circumstances leave to amend was limited to amending in the particulars pointed out by this court.

Nevertheless, a second amended complaint was filed by General Hospital, Inc., and M. L. Ayers, as plaintiffs, against the City of Grangeville as defendant. In the second amended complaint, in so far as pertinent here, it is alleged:

"II. That said defendant, City of Grangeville, now has, and has had at all times herein mentioned, the express statutory power to erect, establish and regulate hospitals, and to provide for the management and support of the same;

"III. That the plaintiff corporation and the defendant, City of Grangeville, through its Mayor, C. O. Vincent, and the members of the City Council who were in office, during the year 1938 entered into an oral agreement with the plaintiff corporation that funds of the plaintiff corporation were to be loaned to the City for the purpose of the construction, erection and equipping of a hospital to be located on * * *." certain land owned by the City of Grangeville, the hospital being later constructed on such land.

"IV. That in consideration for all funds loaned to the City in pursuance to this oral agreement, the defendant, City of Grangeville, through its Mayor, C. O. Vincent, and City Council, orally agreed that said funds should be repaid with interest at six per cent (6%) per annum to the plaintiff corporation out of the earnings of said hospital, such moneys to be returned to the plaintiff corporation from the profits of said hospital, or from such other sources as

the City should determine; and until the corporation was fully repaid with interest, the management, control and handling of said hospital were to be placed in the hands of the plaintiff corporation;

"V. That $21,786.00 were loaned by the plaintiff corporation to the City of Grangeville in pursuance to this agreement up to the 1st day of March, 1939; that a new Mayor, Al. J. Wagner, and City Council were duly elected to office by the city elections held in Grangeville during the month of April, 1939, and that these new city officials were desirous of showing their good faith in honoring the prior agreement between the City of Grangeville and the plaintiff corporation, and by their official act passed a resolution on May 15, 1939, affirming the prior actions of the city officials of Grangeville and pledging the support of the Mayor and City Council for any plan of financing, equipping and operation of said hospital proposed by the committee; * * *.

"VI. That the plaintiff corporation advanced to the City of Grangeville, at its request and in accordance with its agreement, further sums of money for the construction and equipping of the hospital between June 2nd, 1939, and June 15th, 1940, to the amount of $10,412.48;

"VII. That a total of $32,200.48 was loaned to the City of Grangeville by the plaintiff corporation in pursuance to their oral agreement during the period of October 15th, 1938, to June 15th, 1940;" * * *.

"X. That the plaintiff corporation has demanded from the officials of the City of Grangeville that the furnishings and equipment of said hospital be returned to the plaintiff but that at all times the defendant has refused the demands of the plaintiff;

"XI. That the defendant, City of Grangeville, prior to its repudiation of the contract between plaintiff corporation and defendant, had furnished no money whatsoever towards the construction or equipping of said hospital;" * * *.

"XIII. That on January 30, 1946, the plaintiff corporation, by its president, Edwin Nelson, duly presented in writing to the defendant a claim, duly itemized and certified by the plaintiff Ayers, as Treasurer of plaintiff corporation, to be correct and justly due; * * *.

"XIV. That the defendant city, by the action of its then Mayor, G. W. Eimers, and City Council, refused payment thereon on the 1st day of December, 1947;

"XV. That the said defendant city has not paid the claim marked Exhibit 'B' or any part thereof, to the plaintiff's damage in the sum of $32,182.43;

"XVI. That the plaintiff has no adequate remedy at law; that said transaction was handled by the defendant, as the plaintiff corporation has now determined, without compliance with law, and that in natural justice, equity and good conscience the defendant should not be allowed to retain the benefits of the contract without repaying the moneys advanced by the plaintiff

corporation, and that the defendant should not be allowed to retain the furnishings and equipment of the hospital that were paid for from the funds of the plaintiff corporation, and that the plaintiff corporation is in equity entitled to restitution of moneys advanced to the unjust enrichment of the City of Grangeville for the building and equipping of the hospital and for the furnishings placed therein by the plaintiff corporation; and therefore the plaintiff corporation is entitled to a lien upon said hospital, and furnishings and equipment therein, for the amount of money furnished as aforesaid, to-wit, the sum of $32,182.43, together with interest thereon at the rate of six per cent (6%) per annum from April 14th, 1940."

Defendant city demurred to the second amended complaint upon the ground, among others, that such complaint did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer and rendered and entered judgment of dismissal from which judgment an appeal was taken to this court. For a reversal of the judgment of dismissal appellants specify the following alleged error: "The court erred in sustaining the defendant's demurrers to plaintiff's second amended complaint and in entering a judgment of dismissal thereon, for the reason that the amended complaint states a cause of action against the defendant and is not dismissable by reason of the demurrers."

If a city can, under our constitution, construct a hospital with money loaned to it for that purpose, thereby creating and contracting a debt, in excess of the revenue provided by the city for the year in which it is attempted to contract the debt, without the assent of two-thirds of the qualified electors of the city, under an agreement to pay the debt out of the proceeds of the operation of the hospital, then the trial court erred in sustaining respondent's demurrers and dismissing the action. Otherwise, the judgment of dismissal must be affirmed.

Section 3, Article 8, of our constitution provides that: [Sec. 3] "No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

In 1912 the city of Coeur d'Alene attempted to purchase a waterworks system and for that purpose issued bonds to the amount of the purchase price, it being expressly provided the bonds, and interest thereon, were to be paid "solely from the fund to be created from the revenues of the waterworks to be purchased." In other words, it was provided the bonds, and interest, were to be paid solely out of the proceeds of the operation of the water system, and as in the instant case, the debt created by the issuance of the bonds was in excess of the revenues of the city for the year in which the bonds were issued and the debt contracted, the debt being contracted without the assent of two-thirds of the electors of that city. Whereupon Charles Feil commenced a suit to enjoin the issuance and sale of the bonds. Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643, 43 L.R.A., N.S., 1095. The trial court held in favor of the city and rendered judgment accordingly. On appeal this court held the issuance of the bonds created a liability against the city of Coeur d'Alene in excess of the revenues of the city for the year in which the bonds were issued, without the assent of two-thirds of the electors, and reversed the judgment of the lower court with directions to that court to grant a perpetual injunction against the issuance of the bonds. It is immaterial, under the rule held in the Feil case, supra, as to what the purpose of a city may be, whether to purchase waterworks or construct a hospital, if in doing either a city becomes liable in excess of its revenues for the year in which the liability is created, without the assent of two-thirds of its electors, it comes at once within the express prohibition of section 3, supra.

But appellants contend the second amended complaint should be held to state a cause of action under the rule announced in Foster's, Inc., v. Boise City, 63 Idaho 201, 118 P.2d 721, and Shaw v. Board of Education, etc., 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432. In the first case it appears Foster's brought suit to perpetually enjoin the city of Boise from enforcing certain ordinances providing for the installation, purchase and use of parking meters on certain streets of the city. From a judgment for the city an appeal was taken to this court. While other questions were involved on the appeal, it was, nevertheless, contended the transaction involved in the purchase and use of the parking meters violated section 3, supra, "in that it created a debt in excess of the income provided for the payment thereof [referring to the transaction involved in the purchase and use of the meters] for the year in which the debt was incurred." · Id., 63 Idaho at page 209, 118 P.2d at page 724.

In passing on that contention this court held: "It is quite clear that no *debt or liability* [emphasis in the opinion] was created against the city by these transactions except such as provision was made for the payment or liquidation of during the fiscal year for which it was incurred; * * *.

This transaction does not come within the prohibitions of the rule announced in Feil v. City of Cœur d'Alene, 23 Idaho 32, 129 P. 643, 43 L.R.A.,N.S., 1095; Miller v. City of Buhl, 48 Idaho 668, 284 P. 843, 72 A.L.R. 682; Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475; and Straughan v. City of Cœur d'Alene, 53 Idaho 494, 24 P.2d 321, relied upon by appellants." Id., 63 Idaho at page 210, 118 P.2d at page 724.

The second case cited by appellants is in support of the proposition " 'that a municipality cannot acquire property under an invalid contract, and, on this ground, evade payment either of the contract price or the reasonable value of the property, and also retain the property; at least, where the contract is not wholly beyond the power of the corporation to make, or violative of public policy. If the contract is invalid merely because not entered into in accordance with statutory requirements, and the seller has acted in good faith in the matter, he will be allowed to recover the property. Whether he is entitled to recover the property when the contract is entirely beyond the power of the corporation to make, or is violative of public policy, is not entirely clear from the cases. No reason is perceived for making any distinction between a contract invalid merely because of some irregularity, and a contract void because beyond the power of the corporation to make, unless the subject-matter of the contract has been so appropriated that it could not be removed without causing injury to other property of the corporation. In such

case the right to remove the property might be denied, but when the contract was irregular merely, compensation would be given.' " Shaw v. Board of Education, supra, 38 N.M. at pages 996, 997, 31 P.2d at page 996.

However, and, nevertheless, the New Mexico supreme court, as well as other courts mentioned by that court, recognize that " 'general pronouncements of primary justice cannot be availed of or given effect in all cases of void contracts with municipalities. Where the acts or dealings upon which the contracts are based are "prohibited by their charters, or some other law bearing upon them, or are malum in se, or violative of public policy," where the plaintiff, in order to recover, "must trace his right through a violation by him of positive law, the courts will not lend their aid to reimburse the loss, nor to restore the property delivered under such contracts." ' " Id., 38 N.M. at page 997, 31 P.2d at page 997.

In the case at bar, as hereinbefore pointed out, the debt contracted by the loan of money to respondent for the purpose of constructing a hospital, and for which appellant General Hospital presented a claim to respondent, was in excess of the revenues of respondent for the year in which the debt was contracted, without the assent of two-thirds of the electors; therefore, prohibited by section 3, article 8, supra; hence, comes squarely within one of the exceptions noted in Shaw v. Board of Education, su-

pra, in this, it is a contract expressly prohibited by law, to wit, section 3, supra.

 Furthermore, that General Hospital, Inc., sought in the trial court to recover an alleged debt, is clear, in this: The second amended complaint alleged the making of a loan to the city; that the loan drew interest at the rate of six per cent per annum; that only the sum of $18.05 had ever been paid; that a claim for the balance was presented to the city and the city refused payment; that the city had not paid the claim so presented or any part thereof, and that "plaintiff corporation is entitled to a lien [of course, to secure the payment and collection of the claim] upon said hospital, and furnishings and equipment therein, for the amount of money, furnished as aforesaid, to-wit the sum of $32,182.43, together with interest thereon at the rate of six percent (6%) per annum from April 14th, 1940." The second amended complaint, therefore, unmistakably, both in form and substance, makes this an action at law to recover an alleged debt, and the case was necessarily tried on that theory in the court below.

Nevertheless, appellants insist the question presented to this court is, whether a "municipality is so privileged that it may acquire property at the expense of others without paying for the property and without returning the property". In considering this contention it must be kept in mind the hospital was constructed on land owned by the city; that General Hospital seeks a "return" of both without offering to pay the city the reasonable value of its land; instead, the city is charged with "unjust enrichment." "He who seeks equity must do equity." And, further, to quote Shaw v. Board of Education, supra, 38 N.M. at page 996, 31 P.2d at page 996, relied upon by appellants: " 'The obligation to be just and to do right rests upon all persons, natural or artificial' ".

The judgment is affirmed, with costs to respondent.

GIVENS, J., and FEATHERSTONE, TAYLOR and SUTPHEN, Dist. JJ., concur.