**MELLON, Secretary of the Treasury, v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.**

(Court of Appeals of District of Columbia. Submitted October 6, 1922. Decided January 2, 1923.)

No. 3720.

1. **Customs duties ⊂⊃92—Secretary of the Treasury has not discretion under act requiring pay for overtime work of inspectors.**

Under Act Feb. 7, 1920, 41 Stat. 402, amending Act Feb. 13, 1911, § 5, and requiring the Secretary of the Treasury to fix a reasonable rate of extra compensation for customs employees for work out of hours, or on Sundays and holidays, which extra compensation shall be paid by the master, owner, agent, or consignee of the vessel or other conveyance, the Secretary has no discretion, but the imposition of a tax is involved, which can only be accomplished by express authority of law, so that, in determining whether the Secretary has kept within the law, the courts are not limited by any rule enjoining respect for official discretion.

2. **Customs duties ⊂⊃53—Secretary of the Treasury cannot amend law by regulations.**

The Secretary of the Treasury cannot change or amend a revenue law by regulation, but his power is limited to the regulation of the mode of proceedings for carrying into effect what Congress enacted.

3. **Customs duties ⊂⊃92—Railway cannot be required to pay overtime compensation for inspectors to examine passengers' baggage.**

Act Feb. 7, 1920, amending Act Feb. 13, 1911, § 5, authorizes the Secretary of the Treasury to require payment of extra compensation of customs officers only in case of the lading or unlading of vessels or other conveyances and examination of passengers' baggage on water craft at ports of entry, and does not authorize him to require a railway company to pay overtime compensation of inspectors for the inspection of the baggage of their passengers.

Appeal from the Supreme Court of District of Columbia.

Suit by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company against Andrew W. Mellon, Secretary of the Treasury. Decree for plaintiff, and defendant appeals. Affirmed.

Peyton Gordon and Vernon E. West, both of Washington, D. C., for appellant.

J. I. Peyser and J. C. Adkins, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

VAN ORSDEL, Associate Justice. Appellee, plaintiff below, filed its bill praying an injunction to restrain defendant, Andrew W. Mellon, the Secretary of the Treasury, from requiring it to pay the wages of customs inspectors at night, on Sunday, and on holidays, who inspect the baggage of passengers on plaintiff's trains at the Canadian border. Plaintiff also seeks to restrain the threatened refusal of defendant to permit plaintiff's trains to enter the United States.

It appears that plaintiff operates three railroad lines entering the United States from Canada: One line from Winnipeg to St. Paul, entering at Noyes, Minn.; one from Moose Jaw to St. Paul, entering at Portal, N. D.; and the other from Montreal to Minneapolis, entering at Sault Ste. Marie, Mich. Plaintiff operates over each line a daily passenger train, entering the United States between 5 p. m. and 8 a. m. These trains carry only passengers and their baggage. The United States, for the purpose of collecting customs duties, maintains inspectors at the above points on the international boundary for the examination of baggage and passengers coming in. Prior to 1920 this service was performed by the government, without the payment of any part of the expense by the railroad companies. The Secretary, however, claims the right to enforce payment of the wages in question by the railway companies, under the provisions of an Act of Congress of February 7, 1920, 41 Stat. 402, amending an Act of February 13, 1911, 36 Stat. 901.

The case was heard in the court below upon bill and answer, and from a decree enjoining the Secretary, as prayed in the bill, this appeal is prosecuted.

The act of 1920, amending section 5 of the act of 1911, under which the Secretary assumes to act, provides, among other things:

"That the Secretary of the Treasury shall·fix a reasonable rate of extra compensation for overtime services of inspectors, storekeepers, weighers, and other customs 'officers and employees who may be required to remain on duty between the hours of five o'clock post meridian and eight o'clock ante meridian, or on Sundays or holidays, to perform services in connection with the lading or unlading of cargo, or the lading of cargo or merchandise for transportation in bond or for exportation in bond or for exportation with benefit of drawback, or in connection with the receiving or delivery of cargo on or from the wharf, or in connection with the unlading, receiving, or examination of passengers' baggage. * * * Said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance."

[1] The case, of course, turns upon the single question of the application of the act to the inspection and examination of the baggage of passengers transported on appellee's railroad lines from Canada into the United States. No discretion is vested in the Secretary by the terms of the act. The imposition of a tax is involved, which can only be accomplished by express authority of law. Hence, in determining whether the taxing official has kept within the law, the courts are not limited by any rule enjoining respect for official discretion. The court in International Ry. Co. v. Davidson, 257 U. S. 506, 42 Sup. Ct. 179, 66 L. Ed. 341, interpreting the statute here under consideration, said:

"Section 161 [Revised Statutes] does not confer upon the Secretary any legislative power. Morrill v. Jones, 106 U. S. 466; United States v. George,

228 U. S. 14. A regulation to be valid must be reasonable and must be consistent with law. The instruction given lacks both of these essentials. To collect the cost of customs service from vessel owners or others is virtually laying a tax upon them. This cannot be done except by specific authorization of Congress. Moreover, unless so authorized no official or employee may receive from the government pay for extra services. Revised Statutes, § 1764; United States v. Garlinger, 169 U. S. 316. Nor may he receive in connection with his services pay from any private source. Act of March 3, 1917, c. 163, § 1, 39 Stat. 1106. Customs officials especially are forbidden to receive such payment. Revised Statutes, § 1790."

[2, 3] The Secretary of the Treasury cannot change or amend a revenue law by regulation. His power is limited to the regulation of the mode or proceedings for carrying into effect what Congress enacted. In the present case we think the dividing line between the persons to whom the act in question applies and those excluded from its application has been so clearly defined by Congress as to admit of no confusion. The authority here vested in the Secretary of imposing upon the master, owner, agent, or consignee, the payment of extra wages for customs officials for overtime services in loading or unloading vessels or other conveyance and examining passengers' baggage on water craft at ports of entry, has no relation to the examination of the baggage of passengers on railway trains entering the United States from an adjoining country.

"Congress created two distinct systems for the examination of articles coming from foreign countries. One dealt with articles imported as merchandise; the other with passengers' baggage and personal effects. That distinction, established by the Act of March 2, 1799, c. 22, 1 Stat. 627, has been preserved in all later legislation. * * * That Congress intended by the act of 1920 to abandon this distinction between merchandise and passengers' baggage which had been carefully preserved in the act of 1911, is not to be assumed." International Ry. Co. v. Davidson, supra.

We are of the opinion that the Davidson Case is controlling here. In that case the railway company operated two public toll bridges across the Niagara river between Canada and the United States. The company operated passenger cars over these bridges. Passengers crossed by car, in other vehicles, and on foot. Prior to the passage of the act of 1920, customs inspectors had been maintained at the American end of these bridges, continuously, day and night, including Sundays and holidays. In June, 1920, the collector of customs notified the railway company that, on Sundays and holidays thereafter, trolley cars only would be permitted to enter the United States; and that no passengers would be allowed to enter, except upon surrender to the customs guard of all personal baggage, which would be held by the collector, at the owner's risk, for examination on the following working day. The railway company was further notified that it could secure the continued services of customs inspectors on Sundays and holidays by making application for a special license under the act of 1920. Unlike the present case, however, day and night customs service on ordinary week days was to be continued at the expense of the government. While the court grounded its opinion upon the fact that the railway company was not a common carrier belonging to a line designated as a carrier of bonded merchandise, and, therefore, not within the scope of the act,

the opinion went further and held that the examination of passengers' baggage, referred to in the act, was limited to baggage arriving by vessel or water craft. This in effect disposes of the single issue involved in the present case. The decree is affirmed, with costs.