## WASHINGTON WATER POWER CO. v. CITY OF COEUR D'ALENE et al.

District Court, D. Idaho, N. D.

Dec. 3, 1938.

John P. Gray, W. F. McNaughton, and Robert H. Elder, all of Coeur d'Alene, Idaho, for plaintiff.

Enoch E. Ellison and Joseph B. Hobbs, both of Washington, D. C., John A. Carver, U. S. Dist. Atty., E. H. Casterlin, Asst. U. S. Dist. Atty., and Frank Griffin, Asst. U. S. Atty., all of Boise, Idaho, and W. B. McFarland and C. H. Potts, both of Coeur d'-Alene, Idaho, for defendants.

CAVANAH, District Judge.

The City of Coeur d'Alene, and Harold L. Ickes, Federal Emergency Administrator of Public Works, separately petitioned the Court for a modification of the decree entered on September 9, 1935, enjoining the defendant City and its officers and the Administrator from making and entering into any contract with the Federal Emergency Administration of Public Works or with the United States for the purpose of providing for the construction of a municipal electric power generating plant and distribution system in the City and financing the same with funds received from the Federal Emergency Administration of the United States, whether with loan, gift or grant, or the issuing, pledging, delivering or selling to the Federal Emergency Administration or the United States any bonds of the City issued under its ordinance.

On November 20, 1934, the complaint was filed by the plaintiff, which was thereafter amended, against the defendants, to restrain them from performing the acts re-

ferred to. The evidence at the trial disclosed that the plaintiff is authorized to engage in the generation and distribution and sale of electric energy and power to cities in Idaho, and by ordinance of the City, was granted a franchise for furnishing to the inhabitants thereof electricity for lighting and other purposes. In November 1933 the City enacted an ordinance calling a special election for the purpose of submitting to its voters the proposition for incurring an indebtedness of $300,000 by the issuance of municipal bonds to pay the costs and expenses of the acquisition by purchase or by construction of an adequate light and power plant and distribution system to serve all sections of the City and which was in December 1933 approved by more than two-thirds vote of the voters. Thereafter, and after the proposal was made to the City by the Administrator, to grant and loan funds of the United States to defray the costs of the system, an application was made to the Federal Emergency Administration of Public Works for funds to construct the system wherein a loan was requested and the total cost of the power plant and electric distribution system was estimated to be $337,-580 of which the cost of labor and materials was estimated at $276,512.91 and the contractor's profit thereon at $27,578.09 and other costs and expenses of construction at $33,480. The application was approved by the Federal Emergency Administrator. Prior to the City election a report was made by the engineer employed by it, and which was made public, outlining a plan and the feasibility and cost of building the system for service throughout the City, and in it two sections of the City were omitted from any distribution service, of which the voters were not advised. Considerable evidence was introduced as to the original proposal of the administrator, the contract and the cost of the contemplated system and its adequacy to serve all sections of the city and the Court made findings and entered a decree which are now final, as appeal therefrom was, at the request of the defendants, dismissed by the Circuit Court of Appeals.

The present petitions filed on August 22, 1938, urge that the original decree be modified by permitting the defendants to enter into a new agreement allowing the United States to aid the City in financing the construction of the electric and water systems and by making a grant. The new proposed contract eliminates from the original one which was submitted to the Court at the trial, the right or power of the administrator with respect to rates to be fixed or charged for the service and facilities afforded by the project. On October 22, 1938, the plaintiff filed its objections to the petitions and asserts that they are based upon the records of the case, testimony introduced at the trial and five affidavits, the objections urge:

(1) The Court is without jurisdiction or power to modify the decree as requested.

(2) There has been no change in the facts and the law which would authorize a modification of the decree.

(3) That the only change in conditions is that the power load in the City has so increased since the date of the trial that the amount of money which was found necessary for the construction of an adequate plant at that time would be insufficient to construct an adequate plant at the present time.

(4) That no claim of change of conditions resulting from the decisions of the Supreme Court of the United States where an error in the decree, if any, could have been corrected on appeal for the reason: (a) That on October 7, 1935, the Administrator made and executed a unilateral contract or offer to the City under which earlier requirements with respect to the regulation of rates by the Administrator was omitted as a matter of policy, (b) that the new contract and change of policy was not called to the attention of this Court before the terms at which the decree was entered but on December 5, 1935, the defendants appealed from the final decree to the Circuit Court of Appeals and thereafter the City declined to execute the new contract until the injunction had been vacated and the appeal was dismissed on the motion of the defendants.

(5) That the proposed contract and the Act of Congress authorizing the loan and grant by the Administrator violated the Constitution of the United States because the expenditure proposed was not national but local in character.

(6) That the proposed contract violated the 10th amendment to the Federal Constitution, U.S.C.A.Const. Amend. 10, and that the acts of the Administrator and the proposed contract involved an effort on the part of a Federal officer to regulate rates for electrical power of the plaintiff in the City, as well also as the rates of the municipal utility, if established, which was a

usurpation of the functions of government belonging to the State of Idaho, and to enable the City to construct a plant or require the plaintiff to reduce its rates twenty per cent lower than fixed by the Public Utilities Commission of Idaho.

(7) That the contract and proposed electric power generation and distribution system which the City proposed, involved the expenditure and incurring of a liability in violation of section 3, article 8 of the Constitution of the State of Idaho, as the ordinance submitting to the tax-payers of the City the proposal for the issuance of general obligation bonds for the construction of the electric power generating and distributing system contemplated an adequate system which would serve all of the City and that such a system could not be built for the amount of the bonds plus the amount of the gift and grant proposed to be made to the City or the maximum amount allowed by the Act under which the grant was proposed to be made and for that reason the proceedings for the installation of the plant and distribution system were illegal.

(8) That the decree was based, not alone upon the construction of the Federal Constitution but upon a construction of the Constitution of Idaho, upon the adjudicated facts with reference to the submission to the electors of the proposed bond issue, the character of the system which was to be constructed and the cost thereof, and that an adequate system such as was authorized by the electors could not be constructed for the amount of the bonds plus the gift or grant, and the decree having become final, the matter is res judicata.

■ There can be no doubt of the power of a Court of equity to modify an injunction in adaptation to changed conditions where enough is shown to justify its existence. This principle was recognized by the Supreme Court in the case of the United States v. Swift and Company, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, where it is said [page 462]: "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. * * * A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." The events to come in the present case were the execution of the contract by the administrator with the City providing for the gift or grant to be used by the City

in the construction of an electric system by it after proceeding in the manner authorized by the Constitution and laws of the State.

It must be kept in mind that the finding and decree of the Court were based upon evidence introduced at the trial and the principle of law then applicable and the correctness of the Court's decision that the old agreement was unlawful and should be enjoined is not now challenged, as the Administrator now states that the old contract contained provisions with respect to rates and in view of the fact that the bonds of the City to be required by the United States are general obligation bonds and not revenue bonds it was a mistake ever to have insisted in the proposed old contract any provision with respect to the rates to be charged by the City and that the sending of the letters and telegrams was an error and because of such fact that such attitude was entirely "unjustified" and has been repudiated and he reached such conclusion after the case was on appeal from the opinion of this Court, but the petitioners now merely request that the decree be modified in order to permit the parties to enter into a new grant agreement as it is not subject to the same objections as the old one and predicate their argument on the decisions of the Supreme Court in the cases of Alabama Power Company v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374, and Duke Power Co. v. Greenwood County et al., 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381, where it was held that electric power companies operating under a non-exclusive franchise "had no standing to question the validity of the loans and grants under the federal statute, or the validity of the statute in that regard under the Federal Constitution, since the only damage threatening the company was the damage of lawful competition." But a careful examination of the facts and conclusions of the Court in those cases do not militate against the conclusion reached by the Court in the present case that the plaintiff, an electric power company operating as a tax-payer in Idaho, could question the validity of the loan or grant where it undisputedly appears by the evidence as here when in attempting to dictate to both the plaintiff and the city, lower rates to be fixed and charged for the electric service, coercion was involved before the loan and grant would be made by the administrator. If an attempt was made by the City and the administrator to require plaintiff to lower the rates it was charging,

lower than those fixed by the Utilities Commission of the State, and the plaintiff was informed, as here, that unless it reduced its rates twenty per cent that the loan and grant would be made by the Administrator to the City, so it could construct a system, then the views expressed by the Supreme Court in the two cases would permit electric operating companies to maintain suit to question the validity of such loans and grants as the Court said in the case of Alabama Power Company v. Ickes, supra:

"It, therefore, appears that each of the municipalities in question has authority to construct and operate its proposed plant and distribution system in competition with petitioner, and to borrow money, issue bonds, and receive grants for that purpose; that it determined to do so of its own free will, without solicitation or coercion; that there was no conspiracy between any of the respondents and any other person, or any effort or action motivated by a desire to cause injury or financial loss to petitioner, or any purpose to regulate rates or foster municipal ownership of utilities. * * *

"The only pertinent inquiry, then, is what enforceable legal right of · petitioner do the alleged wrongful agreements invade or threaten? If conspiracy or fraud or malice or coercion were involved, a different case would be presented, but in their absence, plainly enough, the mere consummation of the loans and grants will not constitute an actionable wrong."

The power of Congress under the Welfare and Commerce Clause of the Constitution was not decided in those cases, but it is suggested by counsel for the administrator that the Supreme Court in its decision in the case of Duke Power Company et al. v. Greenwood County et al., supra, disposed of the same argument made here, as to the contract but it will be found there that the Court did not express an opinion as to the character of evidence relating to coercion for it said [page 307]: "We express no opinion upon the merits or the relevancy or effect of the evidence." But we find that the old contract here has now been eliminated and the proposed new one substituted and the objectionable terms and conditions of the old one which had been held by this court to be in excess of the authority of the Administrator have been eliminated and there does not now exist any coercion but merely a proposal to make "a grant to the city in an amount equal to 30 per centum of the cost of labor and material employed under the project,

not to exceed in any event the sum of $175,000.00 upon the condition that the City will be able to complete the project for the sum granted and will be able to obtain funds which in addition to the grant shall be necessary to complete the project." Notwithstanding the new proposal, the plaintiff contends that as the proceedings relative to the old contract were tainted with "coercion" we cannot remove it when considering the new proposal and contract. This would be a harsh rule to apply when the Administrator further states that he has advised the City that he waives irrevocably all provisions of the old contract relative to fixing rates and has completely abandoned and regrets that he ever expressed any intention to have any control of any kind of the rates of the city or any interest of the plaintiff's or the city's rates or service, and from such a · changed attitude we should be reasonable and fair in applying the universal rule of forgiving of a change of mind when made conscientiously.

When this appears, which relates to events to come, the injunction should be modified in adaptation to the changed condition, and in light of what has been said in respect to the views of the Supreme Court in the cases of Alabama Power Co. v. Ickes, supra, Duke Power Co. et al. v. Greenwood County et al., supra, and United States v. Swift and Company, supra, as granting to the Administrator authority to make the grant under conditions as provided for in the new proposal and contract. The next problem is whether the decree should be modified in permitting the City and its officers to construct a system and provide funds for its payment under the evidence taken at the trial and the affidavits submitted on the hearing of the petitions, and the consideration of the problem is confined to the requirements of the State Constitution and laws and their interpretation of the highest Court of the State for the authority to provide necessary funds and incur liability to pay for the construction of the electric system is governed by them and therefore we must refer to the provisions of the State Constitution and statutes and decisions of its Supreme Court which are conclusive and binding. Erie Railroad Company v. Tompkins, 302 U.S. 671, 58 S.Ct. 50, 82 L.Ed. 518.

The Constitution of the State of Idaho provides, Section 3, Article 8: "No * * * city * * * shall incur any indebtedness, or liability, in any manner, or

for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void." Under that provision of the Constitution the legislature has provided the manner and procedure necessary to be taken when a municipality desires to incur an indebtedness or create a liability in excess of its annual revenue, Sections 49-2405, 49-2406 and 49-2411, I C A.

We find that the State Supreme Court, when interpreting these provisions of the State Constitution and Statute, has said: "The Constitution not only prohibits incurring any indebtedness, but it also prohibits incurring any liability 'in any manner or for any purpose,' exceeding the yearly income and revenue. In this connection it should also be observed that it not merely prohibits incurring any indebtedness or liability exceeding the revenue of the current year, but it also prohibits incurring any indebtedness or liability exceeding the income and revenue provided for such year." Feil v. City of Cœur d'Alene, 23 Idaho, 32-49, 129 P. 643, 649, 43 L.R.A.,N.S., 1095; Miller v. City of Buhl, 48 Idaho 668, 284 P. 843, 72 A.L.R. 682.

In Straughan v. City of Coeur D'Alene, 53 Idaho 494, 24 P.2d 321, the Court held that a tax paying resident and citizen could maintain a bill to restrain the City from acquiring light and water works system under the statute and ordinance imposing a liability upon the City, without providing for annual tax to discharge the liability, contrary to the constitution and gave the same construction of Section 3, Article 8 of the State Constitution as given in its previous decisions. It is obvious that the cost of the electric plant under the plan involved will exceed $300,000 the amount authorized by the ordinance and voters of the City, and is void under the State Constitution and decisions of the State Supreme Court.

Application of these principles to the facts appearing in the evidence and affidavits has not occasioned much difficulty and the conclusion reached accords with the general interpretation of the Supreme Court of the State of the clauses of the State Constitution when applied to facts here involved and with these legal principles controlling we turn to the evidence introduced at the trial which disclosed and was found by the Court in its final findings and decree to be that the City had not complied with the requirements of the Constitution and laws of the State in its attempt to provide the necessary funds to pay for the construction of the electric system and that the system then contemplated was not adequate to service the entire city. The Court found that the total cost of installing an adequate Diesel Engine electric generating plant and distribution system serving 100% of the consumers would be $563,795 and to serve 80% of the load a cost of $472,424, while the proof presented upon the present hearing discloses that the total cost now of installing an adequate Diesel Engine electric generating plant serving 100% of the consumers would be $748,758.-35, and to serve 80% of the load would be $644,186.06, being considerably more than the cost found at the time of the trial.

The ordinance submitting the question of authorization of $300,000 general obligation bond issue and the application of the Federal Emergency Administration, contemplated an electric plant and distribution system adequate to serve all sections of the City and the Administrator required as a condition to the making of the loan and grant that the system to be constructed should be adequate to serve all sections of the City.

This appearing, the proceedings of the City and its officers relating to the bond issue election and incurring the liability of the City, being in violation of the requirements of the Constitution and laws of the State as found by the Court to be illegal and void, in its final findings and decree, the petition of the City to modify the injunction is denied and the findings and order to now be entered will so provide, with the provision that the City and its officers may proceed to provide, if it desires, for the construction of an electric system and incur the necessary expense and issue of obligations when proceeding in the manner authorized by the Constitution and laws of the State, as the pending injunction was based upon the record appearing at the trial and relates to the installation of the electric plant and distribution system.