INTERNATIONAL RY. CO. v. DAVIDSON
et al.

NIAGARA FALLS INTERNATIONAL
BRIDGE CO. et al. v. DAVIDSON,
Collector of Customs.

INTERNATIONAL RY. CO. v. BRADLEY,
Collector of Customs, et al.

Nos. 312–B, 313–B, 451–C.

District Court, W. D. New York.

June 14, 1945.

Franchot, Runnals, Cohen, Taylor & Rickert, of Niagara Falls, N. Y., for complainants.

George L. Grobe, U. S. Atty., of Buffalo, N. Y., for the United States.

KNIGHT, District Judge.

Motions are made by the government for orders vacating judgments in the above-entitled actions which permanently enjoin the defendants from closing certain bridges crossing the Niagara River at Niagara Falls between the United States and Canada and from interfering with the passage of persons and vehicles over said bridges. It is the government's contention that the judgments are no longer effective or enforceable and for that reason should be vacated.

The three cases are considered together.

No merchandise can be brought into the United States without inspection. Officials for this purpose are on duty during hours fixed by the Treasury Department. At the inception of the laws of inspection, after the day was over, importation of merchandise closed. To remedy a consequent delay at wharfs in the unloading of vessels, Congress in 1799, 1 Stat. 665, provided for

night unloading under supervision of Customs Inspectors when ship owners made proper application. A special license under bond was provided for, and the ship owner agreed to pay the salaries of the Customs officers for this night or overtime work. The only carrier who could avail himself of this privilege was a vessel coming from a non-contiguous country up until 1911. In that year the law was amended to include the service to both contiguous and non-contiguous countries to give Mexican and Canadian importers the same advantages in speeding up importation into the United States.

The Act was again amended in 1920 providing that extra compensation payable under Section 5 should be extended to cover overtime "in connection with the unloading, receiving, or examination of passengers' baggage." 19 U.S.C.A. § 267.

The government contended that this had the effect of establishing a system of special licenses applicable to toll bridges which are not vessels or other conveyances, and on which there is neither cargo, loading or unloading but passengers who pass on foot or in trolleys or automobiles and sought to have the plaintiff pay overtime compensation to Custom Inspectors for night work, but the United States Supreme Court in International Railway Co. v. Davidson et al., 257 U.S. 506, 512, 42 S.Ct. 179, 181, 66 L.Ed. 341 (No. 312B) stated: "Obviously the words 'vessel or other conveyance' are not appropriate to describe the plant of a toll bridge." The threatened action of the Collector of the Port of Buffalo to hold baggage crossing the bridge until the next day unless the bridge owners secured a license and paid the collectors for the so-called overtime work was permanently enjoined.

It was in that status that the matter lay for some twenty-five years until the Supreme Court made its decision in United States v. Myers, 320 U.S. 561, 64 S.Ct. 337, 345, 88 L.Ed. 312, wherein Justice Reed states, after noting International Railway Co. v. Davidson, supra: "At that time, the section's application was limited to 'vessel or other conveyance.' Since then Sections 401, 450 and 451 of the Tariff Act of 1922, 42 Stat. 858, 948, 954, and of the Tariff Act of 1930, note 3, supra, have expanded the instrumentalities to include every contrivance capable of being used

as a means of transportation on land or water. The difference in definition, we think, brings bridges and tunnels under the overtime pay requirements of Section 5."

It is urged that the last-above quotation was dicta. It declares the view of the court and has strong persuasive influence on the lower courts. Riverside Cement Co. v. Rogan, D.C., 59 F.Supp. 401, and cases cited.

After the Myers decision, Congress enacted Public Law 328, approved June 3, 1944, 19 U.S.C.A. § 1451, amending section 451 of the Tariff Act of 1930, so as to provide that neither sections 450, 451 nor 452 of the Tariff Act of 1930, 19 U.S.C.A. §§ 1450–1452, nor section 5 of the Act of February 13, 1911, 19 U.S.C.A. § 267, should apply to the owner, operator or agent of a highway, vehicle, bridge, tunnel or ferry between the United States and Canada and that the United States is to pay the Customs Inspector and not the owner, operator, or agent.

While this motion was pending, the government moved to amend its notice of motion in each case by adding a statement of the said amendment of 1944 and further reciting that the injunctions are void since they "constitute a suit against the United States to which the United States has not consented, at least in so far as the successors of the former Collectors are concerned." This amendment is granted.

Assuming that the law is that the owners of bridges and tunnels are included among those required to take out license, the injunctions in the instant cases are now of no effect.[1] However, if the Myers decision is not to be taken as a statement of the law as to the inclusion of bridges and tunnels under Section 5, supra, the aforesaid Act of 1944 specifically provides that the "owner, operator, or agent" of any bridge or tunnel shall not be required to take out "any license, bond, obligation, financial undertaking, or payment in connection" with the payment of compensation for Custom Officers and employees for services at a tunnel or ferry, and this statute makes the injunctions ineffective.

Plaintiffs contend that this court has no jurisdiction to entertain the motions because they are not timely made, and they rely mainly on Wallace v. United States, 2 Cir., 142 F.2d 240, construing Rule 60

---

[1] See also Di Benedetto v. Morganthau, 148 F.2d 223.

(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. There can be no question that a court of equity has the power to set aside an injunction when it appears that it is no longer effective or unenforceable. Mr. Justice Cardozo said in United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999: "* * * a continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." Here we have a "continuing decree of injunction directed to events to come." It is true in that case the power to modify the injunction was reserved by its terms, but as to this the court said: "If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery." As was said by Mr. Justice Frankfurter in Milk Wagon Drivers Union v. Meadowmoor Co., 312 U.S. 287, 298, 61 S.Ct. 552, 557, 85 L. Ed. 836, 132 A.L.R. 1200, decided 1940, and since the adoption of Rule 60: "Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted." The following cases and many others are to the same effect: Hodges v. Snyder, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819; State of Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 59 U.S. 421, 15 L.Ed. 435; Mellon v. Minneapolis, St. P. & S. S. M. R. Co., 56 App.D.C. 160, 11 F.2d 332; John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 128 F.2d 981; Western Union Tel. Co. v. International Brotherhood of Electrical Workers, 7 Cir., 133 F. 2d 955; Washington Water Power Co. v. City of Coeur D'Alene, D.C., 24 F.Supp. 790, and Id., D.C., 25 F.Supp. 795; Freeman on Injunctions, Vol. 1, sec. 253; Restatement of the Law, Torts, Sec. 943.

It is not understood that the plaintiffs assert that this authority does not exist, but the question here is what procedure is to be followed in exercising it. Plaintiffs assert that Wallace v. United States, supra, denies the authority of a court of equity to proceed by motion to vacate. In that case a motion was made to set aside an order of dismissal entered after the limitation period fixed by Rule 60(b) of the Federal Rules of Civil Procedure, and the motion was based on excusable delay. The court did hold that the motion could not be sustained under the provisions of the exceptions stated in 60(b), that it "* * * does not limit the power of a court (1) to entertain an action to relieve a party from a judgment," i.e., that the motion was not an "action." But the court did say that "action" as there used was "intended to cover whatever could have been done by a writ of error coram nobis or coram vobis, or bill of review, or a bill in the nature of review, despite the fact that such proceeding was, before the new rules, not an independent 'action' but ancillary to the main suit." This conforms to Professor Moore's interpretation, Federal Practice, Vol. 3, page 3253 et seq.

In Safeway Stores v. Coe, 78 U.S.App. D.C. 19, 136 F.2d 771, 773, 148 A.L.R. 782, the court said: "This rule (60) does not limit the power of a court (1) to entertain an action to relieve a party from a judgment. * * * As for the first, in Fraser v. Doing, supra [76 U.S.App.D.C. 111, 130 F.2d 617], we said that its purpose was to preserve, without expanding, the substance of the bill of review. Under the old equity procedure the bill of review served substantially the same purpose after term as the petition for rehearing served during term and consequently would not lie until the time for filing a petition for rehearing had passed. * * * Thus a subsequent decision of a higher court changing the law would lay the foundation for a petition for rehearing, (i.e.) before final decree), * * * but would not lay the foundation for a bill of review." Simmons Co. v. Grier Bros., 258 U.S. 82, 42 S.Ct. 196, 198, 66 L.Ed. 475, held that an interlocutory decree may be modified before final decree, "But a bill of review is called for only after a final decree." Moore gives a history of the procedure antecedent to the adoption of Federal Rule 60 and of that rule. Vol. 3, sec. 3258. He states that one of the classes of bills of review known to the old practice was "to introduce newly discovered evidence or other matter." He points out that this type of review should not be confused "with bills of review or other proceedings in the nature of original actions to gain relief, for fraud, or mistake, * * * from judgments or decrees."

■ It seems to me that these motions are in effect in the nature of bills of review and come within the exception included in Section 60(b) (1).[2] As was said

---

[2] In re Barnett, 2 Cir., 124 F.2d 1005; Simmons v. Grier Bros., supra.

in the foot note 13, at page 244 of 142 F.2d, Wallace v. United States, supra: "being ancillary [("action") under the new rules] such a proceeding could be begun without new service of process and by merely serving notice on the attorney who had represented the opposing party in the main suit." But, if they are not such, then, it seems to me, that the court has jurisdiction by virtue of its broad equity powers, and irrespective of the provisions of the new rules to grant the motions on the conditions hereinafter specified. In no comparable case known to me has the question of the right of the court to grant such motions arisen, where the motion was made subsequent to the enactment of the rules. Washington Water Power Co. v. City of Coeur D'Alene, supra, in which a petition to modify an injunction was presented, was decided two months after the adoption of the rules, and no mention of the rules was there made.

■ It is contended by the plaintiffs that this court has no jurisdiction in the matter of the suit of the International Railway Co. v. Davidson, 257 U.S. 506, 42 S.Ct. 179, 66 L.Ed. 341, because it can not entertain a motion to vacate, modify or set aside a decree entered according to a mandate of the Supreme Court without permission of that court having first been obtained. It seems to me that this court has not jurisdiction without such permission. The mandate from the Supreme Court in that case directed that an injunction issue. The only authority in the lower court on the remand is to follow the provisions of the mandate itself. "The mandate required the execution of the decree. The District Court could not vary it or give any further relief." Kansas City Southern R. Co. v. Guardian Trust Co., 281 U.S. 1, 11, 50 S. Ct. 194, 197, 74 L.Ed. 659. Further, "The general proposition which moved that Court (District Court)—that it was bound to carry the mandate of the upper court into execution and could not consider the questions which the mandate laid at rest— is indisputable." Sprague v. Ticonic Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L. Ed. 1184. "The circuit court is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to set-

tle so much as has been remanded." In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 293, 40 L.Ed. 414. Vide also: Simmons v. Grier Bros., supra, and cases there cited; Durant v. Essex Co., 101 U. S. 555, 25 L.Ed. 961; Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656; Obear-Nester Glass Co. v. Hartford-Empire Co., 8 Cir., 61 F.2d 31, and cases cited.

The government cites United States v. Swift, supra, as showing that the lower court modified the decree entered on the mandate. The opinion shows that the Supreme Court in the District of Columbia modified an earlier decree of the same court. The appeal to the Supreme Court was from a decree modifying an injunction by the lower court, and there is no question of any mandate issued by the U. S. Supreme Court.

■ In case No. 451–C an appeal was allowed and specifications of errors filed in the year 1924. No further proceedings were taken to perfect the appeal after that date, and this motion is the first action taken in the suit since. No record was ever filed, and it is the claim of the government that this is a jurisdictional necessity in order to perfect the appeal. The authorities are quite conclusive that this court has no jurisdiction while the appeal is pending. Miller v. United States, 7 Cir., 117 F.2d 256, certiorari denied 313 U.S. 591, 61 S.Ct. 1114, 85 L.Ed. 1545, and Rothschild & Co. v. Marshall, 9 Cir., 51 F. 2d 897, are controlling. Lapse of time does not affect the matter one way or another.

■ As to case No. 313–B, the motion is directed to the vacating of a decree entered in this court. Here again it is urged that the District Court is without power to vacate the decree entered on motion made twenty-two years after entry. Duration of time is not material. But the plaintiff also urges that motion must be denied on the decision in the Wallace case.

■ If the court is correct in its belief that the defendant's remedy is through actions in the nature of bills of review rather than by motion, the question of whether the court has jurisdiction in the instance of cases No. 312–B and 451–C is important only as pointing out the procedure by actions. If we are correct in our view with reference to these two cases, the consent of the Supreme Court and of the Circuit Court must precede the bringing of any ac-

62

tion. The government also urges that these judgments are void because they constitute a suit against the United States "at least in so far as the successors of the former Collectors are concerned." No merit is seen in this contention. It is believed that the injunction is continuing as against any successor Collectors during the continuation of the injunction. Further, if it is found that the injunctions are unenforceable, the question of their being void is not material.

As to case No. 313–B, the motion is granted.

As to case No. 451–C, the motion is granted on condition that the appeal be withdrawn; otherwise denied.

As to the case No. 312–B, the motion is denied, lacking permission of the Supreme Court.